IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERYL BARRETT-BOWIE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:12-CV-4343-M (BF) |
| | § | |
| AMERIDREAM EDUCATIONAL | § | |
| CONCEPTS, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant Select Portfolio Servicing, Inc. ("SPS" or "Movant") has filed a motion for Rule 11 sanctions against Plaintiff's counsel, J.B. Peacock, Jr., David M. Vereeke, Laura L. Pickens, and Dolores G. Gagnon ("Respondents") of the law firm Gagnon, Peacock & Vereeke, P.C. (the "Peacock Firm"). For the following reasons, the District Court should grant the motion and reprimand J.B. Peacock, Jr. and the Peacock Firm.

**Background**

Plaintiff Sheryl Barrett-Bowie stopped making mortgage payments on her Cedar Hill home in April 2011 after a representative of AmeriDream Educational Concepts, LLC ("AmeriDream") caused her to doubt that PNC Bank, National Association ("PNC Bank") was the lawful holder of her mortgage note. *See* Hr'g Ex. A at 1; *see also Barrett-Bowie v. Ameridream Educ. Concepts, LLC, et al.*, No. 3:12-CV-4343-BF, 2014 WL 1210078, at *1 (N.D. Tex. Mar. 24, 2014). Plaintiff sent letters to SPS, her mortgage servicer, disputing the validity of her debt and requesting documents under the Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. § 2601, *et seq*.,

including proof that PNC Bank was the noteholder. SPS responded to Plaintiff's letters, but also initiated foreclosure proceedings against Plaintiff's home. On September 6, 2011, PNC Bank purchased Plaintiff's home at a nonjudicial foreclosure sale. *See* Hr'g Ex. A at 1. PNC Bank subsequently obtained a judgment of possession and sought to evict Plaintiff from the property. To forestall eviction, Plaintiff filed for Chapter 7 bankruptcy protection on May 23, 2012. *Id.* at 2. The bankruptcy court discharged Plaintiff's bankruptcy on August 22, 2012. *Id.*

Plaintiff represented herself throughout most of the bankruptcy proceeding, but retained the Peacock Firm on August 9, 2012, just two weeks before her bankruptcy was discharged. *See* Hr'g Ex. C. The Peacock Firm filed this lawsuit on Plaintiff's behalf in state court on September 20, 2012. *See* Rem. Not. (Doc. 1), Ex. B. Her original state court petition asserted claims against AmeriDream, PNC Bank, SPS, and others for negligence, negligent misrepresentation, unreasonable collection efforts, and violations of RESPA, the Texas Debt Collection Practices Act ("TDCPA"), and the Deceptive Trade Practices Act ("DTPA"). The gravamen of many of Plaintiff's claims was that SPS failed to properly respond to her letters disputing the validity of her debt and that PNC Bank failed to prove it was the legal holder of her mortgage note prior to foreclosure. Plaintiff also sought a declaratory judgment that the defendants had no right to foreclose on her home, to set aside the foreclosure sale and cancel the substitute trustee's deed, and for an accounting of her mortgage loan. SPS timely removed the case to federal court on the basis of federal question jurisdiction.[1]

Shortly thereafter, Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") filed a Rule 12(b)(6) motion to dismiss arguing, among other things, that Plaintiff's claims were barred because

---

[1] The other properly served defendants consented to removal. *See* Rem. Not., Ex. A; Not. of Consent to Removal (Doc. 8).

she failed to disclose them in bankruptcy. *See* Merrill Lynch Mot. to Dismiss (Doc. 9). Plaintiff responded by petitioning the bankruptcy court to reopen her case so she could amend her schedules and add the claims asserted in this lawsuit. The bankruptcy court ultimately denied Plaintiff's petition finding that she knew about her claims while the bankruptcy was pending. *See* Hr'g Ex. 86-91.

On November 16, 2012, Tracy Turner of the Peacock Firm met with Movant's counsel to examine the mortgage note held by SPS on behalf of PNC Bank. SPS Mot., Ex. A, Decl. of Daron L. Janis at 1, ¶ 2. Ms. Turner acknowledged to Movant's counsel that the note appeared to be the original note signed by Plaintiff and that it was properly indorsed to PNC Bank. *Id.*, ¶ 3. Ms. Turner took a copy of the note and shared it with her colleagues in the Peacock Firm. *Id.* at 1-2, ¶ 4. Two weeks later, Plaintiff filed an amended complaint, signed by J.B. Peacock, Jr., in which she alleged that PNC Bank wrongfully claimed to be the owner and holder of her mortgage note and was not entitled to collect on the note because it was never indorsed to PNC Bank. Pl. 1st Am. Compl. (Doc. 16) at 6, ¶ 24. Plaintiff asserted claims for unreasonable collection efforts, violations of the TDCPA, and negligent misrepresentation based on her allegations that SPS failed to prove PNC Bank was the legal holder of her note. *Id.* at 10-15, ¶¶ 38-56. She also sought a declaratory judgment that the defendants had no right to foreclose and to set aside the foreclosure sale. *Id.* at 9-10, ¶¶ 34-37. On January 10, 2013, Plaintiff filed a second amended complaint asserting the same claims based on identical allegations. Pl. 2d Am. Compl. (Doc. 30) at 9-15, ¶¶ 34-56. Mr. Peacock also signed the second amended complaint. *See id.* at 18.

Plaintiff voluntarily abandoned all of her claims other than those for negligence and violations of RESPA by failing to pursue them in response to defendants' summary judgment

3

motions. *See Barrett-Bowie*, 2014 WL 1210078, at *3; *see also* Pl. Resp. to SPS Mot. Sanctions (Doc. 76) at 4-5. SPS filed the instant motion for sanctions two months after the summary judgment motions became ripe for determination. According to Mr. Peacock, however, Movant's counsel first served the motion the night before the parties met for a settlement conference in October 2013. Pl. Resp. (Doc. 76) at 2, ¶ 4. The Court then considered and granted the summary judgment motions, dismissing Plaintiff's remaining claims with prejudice on grounds of judicial estoppel because Plaintiff failed to schedule her claims in this lawsuit as an asset of her bankruptcy estate. *Barrett-Bowie*, 2014 WL 1210078, at *3-4.

By its motion, SPS asks the Court to impose sanctions under Fed. R. Civ. P. 11 against the Peacock Firm because Mr. Peacock signed Plaintiff's first and second amended complaints which contained "frivolous and groundless" claims that were not supported by the facts and were barred by the doctrine of judicial estoppel. Pl. Mot. at 7. SPS criticizes the Peacock Firm for having an improper financial motivation to multiply the proceedings and seeks an order requiring the firm to disgorge all of the attorney's fees collected from Plaintiff and to pay the reasonable attorney's fees and other expenses that SPS has incurred in defending this lawsuit. The Court held a hearing on the motion on March 6, 2014. The issues have now been fully briefed and argued, and the motion is ripe for determination.

**Preliminary Matters**

Respondents object to the exhibits Movant offered at the March 6, 2014 hearing. *See* Pl. Obj. (Doc. 85). Specifically, Respondents contend that the tender of Movant's exhibits was untimely and deprived them of the opportunity to respond. *Id.* at 1-3. They further assert that none of exhibits are

4

in admissible form because they are hearsay and unauthenticated. *Id.* Movant contends that Respondents waived their objections by not raising these issues earlier. SPS Resp. (Doc. 86).

Movant's Exhibit 1-A (Timeline of Events), which summarizes the relevant facts and procedural history of this case and other related litigation, was offered only as demonstrative evidence. The facts set out in the timeline are objective facts that are supported by the pleadings in this case and other evidence previously submitted by Movant in support of its motion for summary judgment or the instant motion for sanctions. To the extent the Court relied on the timeline, it did so only for background purposes. Exhibits 1-C (Plaintiff's Retainer Agreement with the Peacock Firm), 1-D (Plaintiff's Credit Union Account Statement), and 1-E (Peacock Firm's Fee Invoice) were produced to Movant by Plaintiff during discovery and bear Plaintiff's own Bates-label stamp. Movant previously authenticated these exhibits, as well as Exhibits 1-K (Transcript of March 27, 2013 Bankruptcy Hearing) and 1-L (Transcript of Plaintiff's June 5, 2013 Deposition), when it submitted them to the Court in support of its summary judgment motion. *See* Decl. of Daron L. Janis, SPS MSJ App. (Doc. 48), Ex. F at 1-2, ¶¶ 2-5; *see also* SPS MSJ App., Ex. A at 3-21 & Ex. R at 305-14. Exhibit 1-H is Daron L. Janis's declaration. All the facts contained in this declaration appear verbatim in Mr. Janis's earlier declaration that was filed in support of SPS's summary judgment motion. *Compare* Decl. of Daron L. Janis, Ex. 1-H at 1-2, ¶¶ 2-6, *with* Decl. of Daron L. Janis, SPS MSJ App. (Doc. 48), Ex. F at 2, ¶¶ 6-10. Respondent failed to raise any objection to this evidence on Plaintiff's behalf at the summary judgment stage. Exhibits Ex. 1-F (Plaintiff's Verified Original Petition), Ex. 1-G (Merrill Lynch's Rule 12(b)(6) Motion), Ex. 1-I (Plaintiff's First Amended Complaint), and Ex. 1-J (Plaintiff's Second Amended Complaint) are simply copies of pleadings filed in this case. These documents bear the Court's electronic file stamp header and are

5

part of the official record of this case. *See* Docs. 1, 9, 16, and 30. Respondents were not surprised or prejudiced by Movant's reliance on any of these exhibits. Their objections are without merit and are thus overruled.

To the extent Respondents object to Exhibit 1-B (Plaintiff's Adjustable Rate Note) and Exhibit 1-M (Thomas G. Yoxall's Declaration regarding attorney's fees), the Court did not rely on this evidence in deciding the sanctions motion. Accordingly, Respondents' objections to these exhibits are overuled as moot. *See Mannatech v. Glycobiotics Int'l, Inc.*, 513 F. Supp. 2d 754, 762 n.5 (N.D. Tex. 2007) (overruling as moot objections to testimony where testimony was not considered by the court in making deciding matter).

**Legal Standards**

The motion presented to the Court seeks sanctions only pursuant to Fed. R. Civ. P. 11.[2] Rule 11 requires that every pleading, written motion, or other paper filed with the court be signed by the attorney of record or, if the party is unrepresented, by the party himself or herself. FED. R. CIV. P. 11(a). The individual's signature on the filing constitutes a certification that: (1) the filing is not being presented for any improper purpose, such as to harass the opposing party, unnecessarily delay the proceedings, or needlessly increase the costs of litigation; (2) the claims, defenses, and other legal contentions set forth in the filing are warranted by existing law or by a nonfrivolous argument for changing existing law or for establishing new law; and (3) the factual contentions

---

[2] Movant also argued, for the first time at the March 6, 2014 hearing, that the Court should award sanctions *sua sponte* under 28 U.S.C. § 1927. *See* Hr'g Tr. at 14-15. Section 1927 and Rule 11 are directed to different types of conduct and involve different standards of culpability. *See, e.g., Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010) (noting the standard for awarding sanctions under § 1927 is higher than that applicable to Rule 11). Movant did not adequately brief the issues under section 1927, and Respondents did not have sufficient notice of Movant's arguments or a fair opportunity to respond. The Court therefore declines to consider Movant's arguments under section 1927.

contained in the filing have evidentiary support or, after a reasonable opportunity for further investigation or discovery, will likely have evidentiary support. FED. R. CIV. P. 11(b). The standard of compliance is an objective standard of reasonableness under the circumstances. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003). A court may impose "an appropriate sanction" on any attorney that violates the Rule. FED. R. CIV. P. 11(c)(1). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id*. Although district courts have broad discretion to determine the appropriate sanction, the Fifth Circuit has repeatedly admonished courts to impose the "least severe sanction" adequate to deter future misconduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1988) (en banc). The range of appropriate sanctions, which may include a reprimand, a monetary penalty, or an award of reasonable attorney's fees and other expenses directly resulting from the violation, depends on the unique circumstances of each case. *Id.*; *see also* FED. R. CIV. P. 11(c)(4).

**Analysis**

SPS moves for Rule 11 sanctions on grounds that the Peacock Firm filed this lawsuit on Plaintiff's behalf asserting numerous causes of action based on a frivolous "show-me-the-note" theory and a groundless RESPA claim. SPS Mot. at 2. Movant argues that Mr. Peacock violated Rule 11 when he filed Plaintiff's first and second amended complaints in December 2012 and January 2013, respectively. According to Movant, Mr. Peacock and the Peacock Firm should have known since at least November 2012 that all of Plaintiff's claims were barred by judicial estoppel and that any claim based on allegations that SPS failed to prove PNC Bank was the legal holder of her note was frivolous. *Id*. Movant further argues that, because Plaintiff admitted at her deposition

in June 2013 that she suffered no damages from any alleged RESPA violation, the Peacock Firm's continued prosecution of the claim constitutes a violation of Rule 11. *Id.* at 6. Movant contends that Plaintiff agreed to make monthly payments in the same amount as her mortgage to the Peacock Firm and, thus, the firm had an improper financial incentive to continue to prosecute Plaintiff's frivolous and groundless claims. *Id.* at 6-7. Respondents object to Movant's characterization of Plaintiff's claims and their motivations for prosecuting this case. They contend that Plaintiff's claims were warranted by existing law or a good faith argument for changing the existing law on judicial estoppel. Resp. Br. at 4, ¶ 8. They further argue that Rule 11 sanctions are not appropriate with respect to any claim based on an allegation that PNC Bank was not Plaintiff's noteholder because Movant waited until after Plaintiff withdrew those claims to file its motion for sanctions. *Id.* at 4-5, ¶¶ 7, 9.

The threshold issue for determination is whether Respondents' conduct violated Rule 11. This determination must be based on Plaintiff's pleadings at the time they were filed. *See Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006) (Rule 11 motions are governed by the "snapshot" rule which ensures that liability is assessed only for a violation existing at the moment of filing). Contrary to Movant's contentions, "Rule 11 does not impose a continuing obligation on attorneys, only a standard of good faith and reasonable investigation as of the date the legal documents are signed." *Thomas*, 836 F.2d at 884.[3] Fifth Circuit precedent also discourages the imposition of Rule 11 sanctions merely for the eventual failure of factual and legal arguments. "Sanctions are to be applied only where, at the time of the filing, such arguments were unwarranted."

---

[3] Section 1927 "imposes a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritness claim." *Thomas*, 836 F.2d at 875. However, the Court finds Movant's arguments under this standard to be untimely and declines to consider them.

*FDIC v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994). In this case, the appropriate snapshots are the dates on which Mr. Peacock filed Plaintiff's first and second amended complaints: December 3, 2012 and January 10, 2013.[4]

It was not clear that all of Plaintiff's claims were barred by judicial estoppel at the time Mr. Peacock filed Plaintiff's first and second amended complaints. As this Court previously explained, "[j]udicial estoppel is an equitable doctrine that prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Barrett-Bowie*, 2014 WL 1210078, at *3 (citing *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) (en banc)). Numerous considerations inform the Court's application of the doctrine in specific factual contexts. *Id.* Plaintiff's claims in this case arose in a particularly complicated procedural context and involved several equitable considerations, including the fact that Plaintiff represented herself in the bankruptcy proceeding. It was not a foregone conclusion that the Court would grant summary judgment in Movant's favor on grounds of judicial estoppel at the time Mr. Peacock filed Plaintiff's first or second amended complaint. Nor was it certain that Plaintiff would not prevail on her motion to reopen her bankruptcy to amend her schedules and properly disclose her claims against the defendants in this lawsuit. A different result in the bankruptcy proceeding may certainly have changed the outcome here. Thus, Plaintiff's claims were not "unwarranted" merely because the Court ultimately determined they were barred by judicial estoppel.

The Court comes to a different conclusion, however, with respect to Plaintiff's claims that were based on allegations that SPS failed to prove PNC Bank was the legal holder of her note. Mr.

---

[4] Movant indicates that it also seeks sanctions in connection with Plaintiff's original petition filed in state court. *See* Pl. Mot. at 7. However, Rule 11 does not apply to conduct that occurred in state court prior to removal. *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000).

Peacock's associate, Ms. Turner, personally examined the original mortgage note held by SPS on behalf of PNC Bank on November 16, 2012. SPS Mot., Ex. A, Decl. of Daron L. Janis at 1, ¶ 2. Ms. Turner shared a copy of the note, which admittedly appeared to be properly indorsed to PNC Bank, with her colleagues in the Peacock Firm. *Id.* at 1-2, ¶¶ 3-4. Yet, Mr. Peacock subsequently filed two amended complaints that contained allegations that PNC Bank wrongfully claimed to be the owner and holder of Plaintiff's mortgage note and was not entitled to collect on the note because it was never indorsed to PNC Bank. Pl. 1st Am. Compl. at 6, ¶ 24; Pl. 2d Am. Compl. at 6, ¶ 24. These factual contentions have no evidentiary support and, in fact, are directly contrary to the evidence available to Mr. Peacock at the time he filed the first and second amended complaints. Mr. Peacock thus violated Rule 11 when he signed and filed the amended complaints containing these baseless factual allegations. Because Mr. Peacock is a partner, the Peacock Firm is jointly responsible for this Rule 11 violation. FED. R. CIV. P. 11(c)(1).

At the hearing, Respondents argued that Plaintiff's "show-me-the-note" claims were not frivolous because PNC Bank failed to "verify the debt . . . at the crucial time." Hr'g Tr. at 36. That is, the bank's failure to prove it was the legal holder of Plaintiff's mortgage note prior to foreclosure constituted a RESPA violation that resulted in a defective foreclosure. *See id.* at 20. This argument appears to conflate the requirements of the federal statute with the state law governing non-judicial foreclosure sales. Although RESPA requires a mortgage servicer to respond to a borrower's request for information relating to a disputed debt, *see* 12 U.S.C. § 2605(e), Texas law does not require a mortgage servicer to produce the original note as a condition precedent to foreclosure. *Martins v. BAC Home Loans Serv., L.P.*, 722 F.3d 249, 253 (5th Cir. 2013) (affirming dismissal of claims based on theory that only the holder of the note has lawful power to initiate a non-judicial foreclosure); *see*

10

*also* TEX. PROP. CODE § 51.002(a)-(h) (setting forth requirements for nonjudicial foreclosure in Texas, which do not include producing the original note). A mortgage servicer's failure to comply with RESPA does not render a foreclosure defective under state law. Thus, under the facts alleged in the pleadings at issue, the purported RESPA violation could not provide a legal basis for any wrongful foreclosure claim. *Svoboda v. Bank of Am., N.A.*, 964 F. Supp. 2d 659, 670 (W.D. Tex. 2013).

Having determined that Mr. Peacock and the Peacock Firm violated Rule 11, the Court must determine the least severe sanction adequate to deter future misconduct. Movant urges the Court to order the firm to disgorge to SPS all of the attorney's fees it has collected from Plaintiff *and* compensate SPS for the reasonable attorney's fees and other expenses that SPS has incurred in defending this lawsuit. According to Movant, disgorgement is appropriate because the Peacock Firm improperly encouraged Plaintiff to pay the firm's legal fees with funds that should have been used to make her mortgage payments to SPS. *See* Hr'g Tr. at 6, 14-17. This argument ignores that PNC Bank purchased Plaintiff's home at foreclosure almost one year before she retained the Peacock Firm. Plaintiff had no obligation to make mortgage payments following the foreclosure, and there is nothing improper in a law firm accepting a case from a client with funds available to pay their fees. A severe monetary sanction also would constitute an inappropriate windfall to SPS. The specific conduct giving rise to sanctions is not the filing of the original petition or the continued prosecution of this lawsuit. Rather, the sanctionable conduct is limited to the inclusion of the "show-me-the-note" allegations in Plaintiff's first and second amended complaints. Some of Movant's expenses also may have resulted from its own delay in seeking court intervention. SPS waited more than eleven months from the filing of the first amended complaint to file the Rule 11 motion. By

11

that time, Plaintiff had already abandoned her claims based on the allegation that PNC was not the lawful noteholder. Further, Movant waited to serve the motion until the eve of the parties' settlement conference. This timing compromised the settlement discussions and resulted in additional delay.

Mr. Peacock has been licensed to practice for 40 years and has never been sanctioned before. His conduct in this case was not malicious, and while he did not apologize for his conduct, he did mitigate the consequences by abandoning his baseless allegations. Under these circumstances, the Court finds that the least severe sanction that is likely to deter Mr. Peacock and the Peacock Firm from filing pleadings containing baseless factual allegations is a published reprimand and a strong admonishment to not engage in such conduct in the future. *See Jenkins v. Methodist Hospitals of Dallas, Inc*. 478 F.3d 255, 265 (5th Cir. 2007) (admonition by the court may be an appropriate sanction under Rule 11 where the attorney's sanctionable conduct was not intentional or malicious, where it constituted a first offense, and where the attorney recognized and apologized for his actions); *Seawright v. Charter Furniture Rental, Inc*., 39 F. Supp. 2d 795, 805 (N.D. Tex. Mar 24, 1999) (same).

**RECOMMENDATION**

The District Court should GRANT Defendant Select Portfolio Servicing Inc.'s Motion for Sanctions (Doc. 75) and reprimand J.B. Peacock, Jr. and the law firm of Gagnon, Peacock & Vereeke, P.C. as set forth above.

SO RECOMMENDED, June 23, 2014.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).